UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BARBARA ORTIZ,

       Plaintiff,

v.                       Civil Action No. 2:18-cv-1129

WILMINGTON SAVINGS FUND SOCIETY,
FSB d/b/a CHRISTINA TRUST AS
OWNER TRUSTEE OF THE
RESIDENTIAL CREDIT
OPPORTUNITIES TRUST III,
FCI Lender Services Inc., and
Dana Capital Group, Inc.,

       Defendants.

## ORDER

       Pending are a motion for summary judgment, filed May 8, 2019 by defendants Wilmington Savings Fund Society, FSB ("Wilmington"), and FCI Lender Services, Inc. ("FCI"), and the Motion for Leave to File Amended Answer to Amended Complaint, filed May 30, 2019 by Wilmington and FCI. Wilmington acquired the mortgage loan in issue in 2017. FCI services the loan.

## I. Background

In 2003, the husband of the plaintiff, Barbara Ortiz ("Ortiz"), owed approximately $88,000 in real estate debt and about $15,000 on a judgment lien that constituted a second lien on the same real estate. Amended Compl. ¶ 8. Late that year, Ortiz decided to refinance both debts, along with an unspecified amount of unsecured debt, in an "overarching, refinancing debt" (the "Loan") with Fremont Investment & Loan Company ("Fremont"). Plaintiff sought the Loan "primarily to enable negotiation of a settlement of the second judgment lien" of approximately $15,000. Id. ¶ 9. ECF No. 14 at 2 (citing Amended Compl. ¶ 14).

Plaintiff entered into the Loan on January 26, 2004, which amounted to $115,545, pursuant to an adjustable rate note ("Note") secured by a deed of trust in the same real estate ("Deed of Trust"). See Note, ECF No. 5-1; Deed of Trust, ECF No. 5-2; Ex. 1, Ortiz Dep. 50:1-4, 59:15-23. Under the terms of the Note and Deed of Trust, plaintiff owed regular monthly payments. See, e.g., Note § 3, ECF No. 5-1; Deed of Trust § 1, ECF No. 5-2.

Plaintiff claims she was subjected to the practice of "predatory lending" and was exploited by Fremont and Dana

Capital Group Inc. ("Dana Capital"), the Loan broker, and wrongly persuaded into entering into an "unaffordable refinancing secured by [her] home." Amended Compl. 1. Plaintiff claims to have requested a "fixed rate" loan, which, according to her, "was accurately depicted on the loan application." Id. ¶ 22. However, the Loan she entered into was an adjustable rate loan which provided that plaintiff's interest rate would not decrease below 8.99 percent, but could increase to as much as 15.99 percent. Id. ¶ 36. Plaintiff paid monthly installments on her Loan for fourteen years that varied in amounts from month to month. ECF No. 33, Ex. 1, Ortiz Dep. 62:18-63:18; 103:5-12, attached as ex. 1.

Plaintiff further alleges that the settlement statement allocated $8,000 to pay off the judgment lien of $15,000, and Fremont and Dana Capital prepared a closing document titled "Creditors to be paid off," listing $8,000 as an amount required to be paid off. Id. ¶ 42. Dana Capital negotiated a settlement with the judgment creditor to pay $8,000 in exchange for a release of the judgment lien. Id. ¶ 43. She asserts that the judgment lien was not paid with the Loan proceeds until January 2006, but instead held in a trust account for those two years. Id. ¶¶ 44-45. Plaintiff also alleges that the failure to furnish the $8,000 to the judgment creditor

caused the judgment lien to take primary lien status over the Fremont home loan.  **Id.** ¶ 45.

As a result of the aforementioned events, the judgment creditor began collecting on the debt in May 2004.  **Id.** ¶ 47. In April 2005, the judgment creditor sought to utilize what had become its primary lien status to foreclose on plaintiff's property.  **Id.** ¶ 48.  Plaintiff quickly retained an attorney, at a cost of $2,000.00, to negotiate the payoff of the judgment lien for the original amount of the judgment.  **Id.** ¶ 48. Plaintiff paid $7,262.02 of the settlement in August 2005 to the judgment creditor; however, "defendant continued to refuse to release the remaining $8,000.00 to pay off the judgment lien." **Id.** ¶ 49.  The judgment creditor brought suit against plaintiff and lender in January 2006, and lender "finally relented and released the $8,000.00 to the judgment creditor."  **Id.** ¶ 50.

Approximately thirteen years later on May 31, 2017, Wilmington became the owner of the Note, Deed of Trust, and Ortiz's debt through a series of assignments.  **Id.** ¶ 5; Countercl. ¶ 5-7; Assignments of Deed of Trust, ECF Nos. 5-4 to 5-5.  Although Ortiz owed regular monthly payments under the Note and Deed of Trust, she failed to furnish some of them timely.  ECF No. 32 at Aff. of Ron McMahan; Countercl., Ex. A, B.  According to the defendants, "it has been approximately

4

sixteen months since Plaintiff last made a full, timely payment" - since May 18, 2017. ECF No. 13 at Aff. of Ron McMahan ¶ 9. She has been in default on the Loan since at least December 11, 2017. Id. at Aff. of Ron McMahan ¶ 10. As a result, she breached the terms of the Note and Deed of Trust, triggering the Loan's acceleration and the lender's option to exercise its power of sale. Countercl., Ex. 2 at 15; Deed of Trust § 22, ECF No. 5-2.

On December 14, 2017, Wilmington served notice to execute a foreclosure sale of the property. See, e.g., Aff. of Ron McMahan ¶ 11, ECF No. 13-1; Demand, ECF No. 13-8. Thereafter on April 9, 2018, Ortiz instituted a lawsuit in Fayette County Circuit Court, alleging various contractual defenses of unconscionability and fraud and affirmative claims of fraud and excessive late fees. See Amended Compl. The claims "were variously pleaded against Wilmington [holder] as well as Defendants FCI (servicer) and Dana Capital Group, Inc. (broker)." ECF No. 33 (citing Amended Compl.).

The complaint consists of six counts:

Count I, Contract Defense - Unconscionable Broker Agreement (as to Broker Dana Capital only);

Count II, Fraud as a Contract Defense – Loan Agreement (Loan Servicer/Holder);

Count III, Unconscionability as a Contract Defense to the Loan Agreement (Loan Servicer/Holder);

Count IV, Fraud as a Contract Defense and for Damages (as to all defendants); and

Count VI, Excessive Late Fees (Loan Servicer/Lender).

The court notes that Count V has been voluntarily dismissed by the plaintiff.

Defendants Wilmington and FCI removed the action to this court on July 9, 2018, and Wilmington brought counterclaims of breach of contract and declaratory judgment, seeking to exercise its power of sale.  See Countercl.  Wilmington moved for summary judgment on the counterclaim which sought foreclosure.  The motion is denied by order entered contemporaneously herewith.

Wilmington and FCI now seek summary judgment on the claims made against them, asserting that Counts II, III, and IV are time barred, and that plaintiff has failed to create a genuine issue of material fact under Count VI that FCI and Wilmington charged excessive late fees.

## II. Legal Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  <u>Id.</u>  The
moving party has the burden of showing – "that is, pointing out
to the district court – that there is an absence of evidence to
support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 325 (1986).  If the movant satisfies this burden,
then the non-movant must set forth specific facts as would be
admissible in evidence that demonstrate the existence of a
genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at
322-23.  A party is entitled to summary judgment if the record
as a whole could not lead a rational trier of fact to find in

favor of the non-movant.  _Williams v. Griffin_, 952 F.2d 820, 823
(4th Cir. 1991).

## III. Discussion

### A. Motion to Amend

The defendants filed on May 30, 2019 a contested
motion to amend their answer to include the affirmative defense
of laches.  A defendant's failure to assert the affirmative
defense of laches in its answer can, in some instances, result
in waiver.  See Fed. R. Civ. P. 8(c).  However, "there is ample
authority in this Circuit for the proposition that absent unfair
surprise or prejudice to the plaintiff, a defendant's
affirmative defense is not waived when it is first raised in a
pre-trial dispositive motion." _Brinkley v. Harbour Recreation
Club_, 180 F.3d 598, 612 (4th Cir. 1999) (citing _Peterson v.
Airline Pilots Ass'n_, 759 F.2d 1161, 1164 (4th Cir. 1985)
(holding that waiver is not automatic, but requires a showing of
prejudice or unfair surprise); _American Recovery Corp. v.
Computerized Thermal Imaging, Inc._, 96 F.3d 88, 96 (4th Cir.
1996) (evaluating prejudice to plaintiff when considering
timeliness of affirmative defense of arbitration); _Polsby v.
Chase_, 970 F.2d 1360, 1364 (4th Cir. 1992) (noting that
affirmative defenses may be pled in pre-trial motions and that
the district court did not abuse its discretion by permitting

defendant to raise an affirmative defense after the answer); <u>vacated and remanded on other grounds</u>, 507 U.S. 1048 (1993)).

Wilmington took one deposition on January 7, 2019, being that of the plaintiff. The central focus of that entire line of questioning was the passage of time between the date of the closing and the filing of this lawsuit in April 2018, and more particularly, why plaintiff waited fourteen years to bring legal action. <u>See</u> Barbara Ortiz Dep. 61:10–12, 62:15–63:21, 64:24–65:20, 67, 98:11–99:22, 115:20–119:9, ECF No. 37, attached as Ex. 1. Since then the plaintiff was given an opportunity to respond to the merits of laches and statute of limitations arguments in briefing her responses to Wilmington's motion for summary judgment and motion to amend, and she did in fact respond to those arguments.

The plaintiff has been on notice, from an early stage of this case, of the defendants' intent to raise timeliness as a defense strategy pursuant to the affirmative defenses of the statute of limitations and repose listed in their answer to the amended complaint. Answer & Countercl. ¶ 3, p. 12, ECF No. 5 ("Plaintiff's claims are barred in whole or in part by any and all applicable statutes of limitations or repose."). Under the circumstances, the plaintiff is unable to show either surprise or undue prejudice by the defendants' failure to include the

laches defense in their answer.  As hereinafter more fully
developed, the parties addressed the question of timeliness
throughout the course of this litigation, and the plaintiff has
not been unfairly prejudiced by the defendants' inadvertent
omittance.  Consequently, the defense of laches was not waived,
the motion to amend the answer to include it is granted, the
answer is deemed amended accordingly, and the court will
consider the defense of laches on the merits.

B. Counts II, III, and IV

The defendants claim that Counts II (Fraud as a
Contract Defense), III (Unconscionability as a Contract
Defense), and IV (Fraud as a Contract Defense and for Damages)
are untimely.  Counts II and III seek equitable relief that is
subject to a laches defense.  Count IV seeks both equitable
relief and damages at law and is subject, respectively, to a
laches defense and a statute of limitations defense.

Federal courts sitting in diversity apply state
statutes of limitations to state law claims.  See Walker v.
Armco Steel Corp., 446 U.S. 740, 753 (1980).  To determine
whether an action is time-barred, the Supreme Court of Appeals
of West Virginia has outlined a five-step analysis that courts
should follow:

> First, the court should identify the applicable
> statute of limitation for [the] cause of action.
> Second, the court . . . should identify when the
> requisite elements of the cause of action occurred.
> Third, the discovery rule should be applied to
> determine when the statute of limitation began to run
> by determining when the plaintiff knew, or by the
> exercise of reasonable diligence should have known, of
> the elements of a possible cause of action . . . .
> Fourth, if the plaintiff is not entitled to the
> benefit of the discovery rule, then determine whether
> the defendant fraudulently concealed facts that
> prevented the plaintiff from discovering or pursuing
> the cause of action. Whenever a plaintiff is able to
> show that the defendant fraudulently concealed facts
> which prevented the plaintiff from discovering or
> pursuing the potential cause of action, the statute of
> limitation is tolled. And fifth, the court or the jury
> should determine if the statute of limitation period
> was arrested by some other tolling doctrine.

Syl. Pt. 5, Dunn v. Rockwell, 689 S.E.2d 255, 258 (W. Va. 2009).

"Where a suit . . . is not for damages but seeks to rescind a writing or impose a trust or other equitable relief, it is not a common law action for fraud but is equitable in nature. Consequently, the doctrine of laches is applicable rather than any specific statute of limitations period." Syl. Pt. 7, Dunn, 689 S.E.2d at 258. "This is not to say that there is no time limit for filing an equitable cause of action." Id. at 267 n.11. "Laches applies to equitable demands where the statute of limitation does not." Syl. Pt. 2, Condry v. Pope, 166 S.E.2d 167, 167 (W. Va. 1969).

"Laches is a delay in the assertion of a known right which works to the disadvantage of another." Syl. Pt. 2, Bank

of Marlinton v. McLaughlin, 17 S.E.2d 213, 214 (W. Va. 1941).
But "[m]ere delay will not bar relief in equity on the ground of
laches."  Syl. Pt. 1, State ex rel. Smith v. Abbot, 418 S.E.2d
575, 576 (W. Va. 1992).  Instead, the West Virginia Supreme
Court "has consistently emphasized the necessity of a showing
that there has been a detrimental change of position in order to
prove laches."  Dunn, 689 S.E.2d at 267 (citing Maynard v. Board
of Educ. of Wayne Cnty., 357 S.E.2d 246, 253 (W. Va. 1987); Syl.
Pt. 3, Carter v. Price, 102 S.E. 685 (W. Va. 1920)).  For laches
to bar a claim, the defendant must establish a detrimental
change of position as a result of a plaintiff's delay in
bringing the action.  See White v. Daniel, 909 F.2d 99, 102 (4th
Cir. 1990) ("Laches imposes on the defendant the ultimate burden
of proving '(1) the lack of diligence by the party against whom
the defense is asserted, and (2) prejudice to the party
asserting the defense.") (citing Costello v. United States, 365
U.S. 265, 282 (1961)).

        The defendants claim that a "presumption of laches"
based on the analogous statute of limitations for the claims in
issue should be applied.  Id.  "Under equitable principles the
statute of limitations applicable to analogous actions at law is
used to create a 'presumption of laches.'  This principle
'presumes' that an action is barred if not brought within the

period of the statute of limitations and is alive if brought within the period." <u>Tandy Corp. v. Malone & Hyde, Inc.</u>, 769 F.2d 362, 365 (6th Cir. 1985).

"When federal courts, in the exercise of their equitable power, consider laches, they are guided by the limitations period that they would borrow for actions at law and presume that if an equitable claim is brought within the limitations period, it will not be barred by laches." <u>Lyons P'ship, L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789, 799 (4th Cir. 2001), <u>abrogated in part by</u> <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 134 S. Ct. 1962 (2014), (citing, among others, <u>Tandy</u> 769 F.2d at 365-66).

In addition, several short <u>per curiam</u> opinions from the Fourth Circuit Court of Appeals indicate its willingness to presume prejudice as a result of dilatoriness in bringing an equitable action. See <u>Riddick v. Baltimore Steam Packet Co.</u>, 374 F.2d 870, 871 (4th Cir. 1967) (per curiam) (recognizing a "presumption of prejudice"); <u>Davis v. Nelson</u>, 285 F.2d 214, 215 (4th Cir. 1960) (per curiam) ("As this delay of nearly seven years exceeds any possibly applicable limitations period, it became the duty of the libellant to plead and prove facts negativing a presumption of prejudice from inexcusable delay.

The presumption would be against prejudice if suit had been brought during the legal period of limitations.").

In applying the presumption of prejudice where the equitable action is not brought within the statute of limitations period, defendants note that Counts II and IV are for fraud, and assert that the analogous statute of limitations should be two years pursuant to W. Va. Code § 55-2-12, which provides that:

> [e]very personal action for which no limitation is
> otherwise prescribed shall be brought: (a) Within two
> years next after the right to bring the same shall
> have accrued, if it be for damage to property; (b)
> within two years next after the right to bring the
> same shall have accrued if it be for damages for
> personal injuries; and (c) within one year next after
> the right to bring the same shall have accrued if it
> be for any other matter of such nature that, in case a
> party die, it could not have been brought at common
> law by or against his personal representative.

Id. They further claim that the analogous statute of limitations for plaintiff's Count III unconscionability claim should be four years pursuant to W. Va. Code § 46A-5-101(1), which provides:

> If a creditor or debt collector has violated the
> provisions of this chapter applying to collection of
> excess charges . . . illegal, fraudulent or
> unconscionable conduct . . . the consumer has a cause
> of action to recover: (a) Actual damages; and (b) a
> right in an action to recover from the person
> violating this chapter a penalty of $1,000 per
> violation: Provided, That the aggregate amount of the
> penalty awarded shall not exceed the greater of
> $175,000 or the total alleged outstanding

14

indebtedness.  With respect to violations arising from
        consumer credit sales, consumer leases or consumer
        loans, or from sales as defined in article six of this
        chapter, no action pursuant to this subsection may be
        brought more than four years after the violations
        occurred: <u>Provided further</u>, That no action pursuant to
        this subsection to set aside a foreclosure sale of any
        real estate securing a consumer loan may be brought
        more than one year after the foreclosure sale is
        final.

<u>Id.</u> (emphasis in original).

        Defendants contend that, even if this court chooses

not to apply the presumption of prejudice in this case, they

have at this juncture successfully shown (1) lack of diligence

by the plaintiff and (2) prejudice to them.  <u>See</u> <u>Costello</u>, 365

U.S. at 282.  Defendants claim to have detrimentally changed

positions as a result of plaintiff's delay in bringing this

action inasmuch as they were unable to obtain the payment

history of the Loan prior to when Kirkland Financial acquired it

on June 25, 2015, and were thereby prevented from developing a

holder in due course defense.  Further, they assert that, even

if relevant witnesses from 2003 to 2004 could be found, the

"recollection of events" of witnesses from that long ago "are

bound to be faded and of little use."  <u>See</u> ECF No. 33 (citing

<u>Powell v. Bank of Am</u>., N.A., 2012 U.S. Dist. LEXIS 48753, at *18

(S.D. W. Va. 2012)); ECF No. 33 at Ortiz Dep. 61:10–12; 67:11–

23, attached as Ex. 1 (plaintiff herself could not remember

which attorney handled the Loan closing "during which she was purportedly duped and defrauded").

Plaintiff appears to have intentionally pled Counts II and III for equitable relief only, even though both W. Va. Code § 55-2-12 and W. Va. Code § 46A-5-101(1) permit a party to seek damages, should one so choose. See Amended Compl. ¶¶ 70, 77. Count IV, on the other hand, was pled for equitable relief as well as for actual and punitive damages. Id. ¶ 85.

As noted, the analogous statute of limitations for claims under W. Va. Code § 55-2-12 is two years. The alleged fraud here occurred during the Loan origination process, which plaintiff generally alleges took place between the months of December 2003 and February 2004. Amended Compl. 3. Thus, the statute of limitations as to the fraud claims of Counts II and IV would have accrued on a date no later than February 29, 2004.

As also noted, the analogous statute of limitations as to the Count III unconscionability claim brought under the West Virginia Consumer Credit and Protection Act ("WVCCPA") is four years. The statute provides that in the context of a consumer loan, no action may be brought more than four years after the violation occurred. In the present case, the alleged violation – unconscionability as a contract defense to the loan agreement – took place at the time the Loan was entered into by the

parties.  <u>See</u> Amended Compl. ¶¶ 71-77.  Thus, the statute of
limitations as to Count III would have begun to toll on the date
of the closing, which took place on January 26, 2004.

Consequently, the statute of limitations as to Counts
II, III, and IV would have expired long before the filing of
this lawsuit in 2018.

Application here of the presumption of prejudice would
render the plaintiff's Count II fraud as a contract defense
claim, and Count III unconscionability claim as well as the
equitable portion of Count IV, time barred.  That is, the
limitations period began to toll on January 26, 2004, while
plaintiff did not bring this action until April 9, 2018.

The court, however, need not apply the presumption
inasmuch as the court reaches the same conclusion in applying
the traditional laches analysis of delay and detrimental change
of position as a result of the delay.  The plaintiff waited
fourteen years to file this lawsuit, despite having obtained the
appraisal report shortly after closing, despite having made
inconsistent monthly payments for years as a result of the
variable interest rate, and despite having hired an attorney to
review and help correct part of the Loan transaction in 2005.
Amended Compl. ¶ 29; ECF No. 33, Facsimile from Ortiz to
Fremont, attached as Ex. 2 (May 13, 2004); Ex. 3, Letter from

Fremont (May 13, 2004).  The passage of time between the date of
the Loan origination and the filing of this lawsuit has made it
impossible for Wilmington to obtain the full payment histories
of the Loan from prior lenders.  ECF No. 32, Aff. of Ron McMahan
¶ 7.

Wilmington aptly claims to have been unable to develop
a holder in due course ("HDC") defense as a result of the
plaintiff's failure to bring suit in a timely fashion.  If a
transferee qualifies as an HDC, it is immune to "virtually all
defenses."  See One Valley Bank v. Bolen, 425 S.E.2d 829, 831
(W. Va. 1992).  Where a transferee does not qualify as an HDC in
its own right, the "shelter" rule applies, which means that the
transferee can take "shelter" under the transferor's HDC status
pursuant to W. Va. Code § 46-3-203(b).  Under this subsection,
where a negotiable instrument is transferred, any rights of the
transferor, including HDC rights, transfer to the transferee.
This means that both the HDC rights and transferee's shelter
rights can be transferred under this rule.  Id.

The court notes that the plaintiff raises the
discovery rule in her responsive brief to the defendants' motion
to amend.  "The statute of limitation[s] beg[ins] to run . . .
when the plaintiff knew, or by the exercise of reasonable
diligence should have known, of the elements of a possible cause

of action." <u>Dunn</u>, 689 S.E.2d at Syl. pt. 5. Plaintiff claims she learned of the elements of a possible cause of action when a retrospective appraisal was obtained in 2018, at which time she became aware of what the actual market value of her home was at the time of the Loan origination. ECF No. 40 at 5. Thus, she asserts that the statute of limitations accrued in August 2018, rather than at the time of the closing. This argument is without merit.

Ortiz testified that she suspected her home was worth no more than $60,000 at the time she entered into the Loan agreement. Ortiz Dep. 49:14-24, ECF No. 44, ECF No. 37, attached as Exhibit 1. Within one year of the Loan's origination, plaintiff hired an attorney to evaluate the Loan and its origination process. ECF No. 40 at 5. She made multiple monthly payments on the loan that varied in amount due the adjustable interest rate, and made those payments for years without question or complaint, despite asserting that she understood the interest rate as fixed. The Note that plaintiff signed is titled "Adjustable Rate Note." Accordingly, even if the plaintiff claims to have been unaware of the violative conduct until April 2018, she, by reasonable diligence, should have been on notice of it more than a decade ago. Thus, the discovery rule does not aid the plaintiff.

Accordingly, the court finds that laches bars the assertion of Counts II, III, and the equitable relief sought in Count IV against Wilmington and FCI.  Plaintiff also seeks damages for fraud in Count IV, triggering the two-year statute of limitations period pursuant to W. Va. Code § 55-2-12, which began to toll on a date no later than February 29, 2004.  Thus, Counts II, III, and the equitable portion of IV are barred by laches and the damages at law portion of Count IV is barred by the two-year statute of limitations.  Consequently, Counts II, III, and IV are dismissed.

C. Count VI

In Count VI, plaintiff seeks relief from Wilmington and FCI as the current holder and servicer of the Loan for charging excessive late fees.  She claims the defendants "repeatedly charged late fees" in violation of West Virginia law.  Amended Compl. ¶ 97.  The applicable West Virginia statute, W. Va. Code § 46A-3-113(1), mandates as to non-precomputed consumer loans that late fees may not exceed the greater of "[f]ive percent of the unpaid amount of the installment, not to exceed $30."

In looking to the record, there is no evidence that either Wilmington or FCI charged the plaintiff excessive late fees.  The "Demand Loan Payoff" record of FCI which details the

history of charges made by FCI to the plaintiff, including late fees, shows that plaintiff was charged late fees amounting to no more than the equivalent of thirty dollars each month. ECF No. 32, Aff. of Ron McMahan, attached as Ex. 4 at FCI Demand Loan Payoff, attached as Ex. 1. The "Demand Loan Payoff" form is authorized by Ron McMahan, CEO of American Mortgage Investment Partners Management, LLC, a company that maintains business records of Wilmington and FCI. He attests to the fact that, after Wilmington acquired plaintiff's Loan, she was not charged more than a monthly thirty dollar fee for late payments, as evidenced by the payment history, i.e., the "Demand Loan Payoff" form, of FCI. <u>See</u> Aff. of Ron McMahan ¶¶ 4, 10.

On five of the six dates that plaintiff claims the "defendants" assessed excessive late fees, the sum of $56.15 is said to have been charged on August 21, 2015, September 26, 2016, December 5, 2016, March 20, 2017, and May 18, 2017. ECF No. 32, Aff. of Ron McMahan, attached as Ex. 4 at FCI Demand Loan Payoff, attached as Ex. 1. The plaintiff was actually charged those late fees by Kirkland Financial, as shown by the Loan history detailed in the FCI Demand Loan Payoff form. <u>See</u> id. Notably, Wilmington did not acquire the Loan from Kirkland until May 31, 2017, at which time FCI apparently became the servicer.

Plaintiff has provided no authority to support her position that FCI and Wilmington should be held liable for the violation of W. Va. Code § 46A-3-113(1) by Kirkland Financial in charging excessive late fees to the plaintiff.  Instead, she urges that a document showing that FCI charged, on one occasion, a late fee on November 17, 2017 of $56.07 for the transactional period from November 11, 2017 to January 11, 2018 evidences that FCI charged the plaintiff an excessive late fee.  Under the terms of the Loan, plaintiff owed monthly installments.  A single charge of $56.07 over a transactional period of two months, from November 11, 2017 to January 11, 2018, at a time when overdue payments aggregated at least $10,150.65 and the plaintiff had not, during Wilmington's ownership of the Loan, made a single full timely payment was not a violation of the statute.  Accordingly, plaintiff has failed to demonstrate a question of material fact as to whether FCI and Wilmington charged excessive late fees to the plaintiff.  The defendants are entitled to judgment as a matter of law on Count VI.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that the defendants' Motion for Leave to File Amended Answer to Amended Complaint be, and hereby is, granted.

It is further ORDERED that the defendants' motion for summary judgment be, and hereby is, granted, and that Counts II, III, IV, and VI be, and hereby are, dismissed.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: August 1, 2019

John T. Copenhaver, Jr.
Senior United States District Judge